# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Eileen Richter,
Margaret Bledsoe,
Patricia Oetter, and
Sensory Integration International,

      Plaintiffs,

v.

Brian Erwin,
individually and as trustee of the
Franklin Baker/A. Jean Ayres Baker Trust,

      Defendant.

Civil No. 05-2426 (DSD-JJG)

**REPORT
AND
RECOMMENDATION**

---

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter came before the undersigned for a hearing on February 7, 2006. Defendant Brian Erwin moves to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Doc. No. 6). Sarah A. Reindl, Esq., appeared on behalf of the plaintiffs. Ronn B. Kreps, Esq., and Sarah A. McGee, Esq., appeared on behalf of Mr. Erwin. The motion is assigned to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.     BACKGROUND

The underlying dispute in this case is between plaintiff Sensory Integration International (SII), a nonprofit corporation, and the Franklin Baker/A. Jean Ayres Baker Trust (the Baker Trust). A. Jean Ayres, a pioneering figure in the field of occupational therapy, founded the Ayres Clinic in 1976. After her death, the Baker Trust received the Ayres Clinic and other assets arising out of Ayres' work. The Baker

Trust transferred the Ayres Clinic to SII in December 1984 and, as part of this agreement, licensed SII to use Ayres' name.

The trustee of the Baker Trust, Mr. Erwin (Erwin), received reports of wrongdoing by SII in 2002 and 2003. Based on these reports, Erwin publicly accused SII and its board members of fraud and malfeasance in 2003. Erwin also filed a complaint with the American Occupational Therapists Association (AOTA) in May 2003, alleging that SII and its board members had committed several ethical violations. Following investigation of this complaint, the AOTA suspended the occupational therapy license of at least one SII board member, Eileen Richter.

Ms. Richter (Richter) is the lead plaintiff in this action. Joining her as co-plaintiffs are SII and two of its board members, Patricia Oetter and Margaret Bledsoe. Erwin is the sole defendant, but is named both individually and as trustee of the Baker Trust. Four counts are raised in the complaint.

One count is for false designation of trademark under § 43(a) of the Lanham Act. *See* 15 U.S.C. § 1115(a). This count arises out of the December 1984 contract between SII and the Baker Trust. Plaintiffs allege that the contract granted an exclusive license to Ayres' name, and that the Baker Trust violated the contract by granting comparable naming rights to another clinic operated by the University of Southern California.

The remaining counts are for defamation and for tortious interference with contract. For the defamation count, plaintiffs argue that Erwin's statements affected their reputation and caused significant losses to their occupational therapy practices. The theory on the remaining counts, for tortious interference with contract, is not plain from the amended complaint. But plaintiffs appear to proceed on a similar theory

2

as for defamation, arguing that Erwin's statements have interfered with their ability to acquire or maintain clients in their occupational therapy practices.

Erwin here moves to dismiss for lack of personal jurisdiction, or in the alternative, for transfer of venue to the Northern District of California. Erwin, Ms. Oetter, and Ms. Bledsoe all reside in California, and Erwin manages the Baker Trust there. SII is a California non-profit corporation. Its principal place of business, as well as the Ayres Clinic, is located in suburban Los Angeles. Richter resides in Minnesota and practices occupational therapy there.

Plaintiffs allege that Erwin made several statements, through the internet, press releases and national publications, that were published in Minnesota. They add that Erwin and his spouse operate Crestport Press (Crestport), which offers books for direct sale over the internet. Although Crestport publishes some books on Ayres' life and work, the record does not disclose the relationship between Crestport and the Baker Trust. Erwin states that since Crestport was founded in 2003, around $600, or approximately two percent of its sales, are to customers in Minnesota via the internet.

## II.   DISCUSSION

A federal court cannot exercise authority over a nonresident defendant unless it has personal jurisdiction over that defendant. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 696 (8th Cir. 1995). To determine personal jurisdiction, a court must examine whether its authority is within the scope of the long-arm statute for the forum state and whether that authority comports with due process. Because Minnesota's long-arm statute permits personal jurisdiction to the extent allowed by due process, only the limits of due process are relevant here. Minn. Stat. § 543.19; *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 614 (8th Cir. 1998).

3

Due process requires that, to establish personal jurisdiction, the defendant must have minimal contacts with the state, such that an action against the defendant will not violate traditional notions of fair play and justice. Minimal contacts are present when, due to the activities of the defendant in connection with the forum state, the defendant may reasonably anticipate being haled into court there. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The plaintiff has the burden to present prima facie evidence of such contacts. On a motion to dismiss for lack of personal jurisdiction, the evidence is viewed with all reasonable inferences taken in favor of the nonmoving party. *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir. 1988) (per curiam).

When examining whether minimal contacts exist, the principal inquiry is whether the defendant has purposefully taken advantage of the benefits or privileges of the law of the forum state. When the defendant's relationship with the forum state results from random or attenuated contacts, no such purposeful availment has taken place. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Two different analyses may be used to determine whether the defendant's contacts with the forum state establish personal jurisdiction. Specific personal jurisdiction occurs when the plaintiff's action arises out of the defendant's contacts with the forum state. General jurisdiction occurs when the plaintiff's action does not arise out of the defendant's contacts with the forum state, but where the defendant otherwise has such continuous and systematic contacts to permit personal jurisdiction there. *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003).

In *Calder v. Jones*, the U.S. Supreme Court supplied an "effects test" for evaluating personal jurisdiction. 465 U.S. 783, 788-89 (1984). Subsequent Eighth Circuit decisions have applied the effects

4

test to determine whether an intentional tort supplies specific personal jurisdiction.  *See Finley v. River N. Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998) (fraud); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387-88 (8th Cir. 1993) (corporate malfeasance).   Under the effects test, the general inquiry is whether a wrongful act was committed while intending consequences in the forum state.  *See Calder*, 465 U.S. at 789.

The District of Minnesota recently examined the effects test in *Bible & Gospel Trust v. Wyman*. 354 F.Supp.2d 1025 (D.Minn. 2005).   It determined that a court may exercise personal jurisdiction, consistent with the effects test, where (1) the defendant committed an intentional tort; (2) the plaintiff "felt the brunt of the harm in the forum state, such that the forum state was the focal point" of the tort; and (3) the defendant expressly aimed the tort "at the forum such that the forum state was the focal point" of the tort.  *Id.* at 1030-31.

Of the four counts brought by plaintiffs here, the count under § 43(a) of the Lanham Act is limited to the dispute between SII and the Baker Trust.  Because this count does not allege any facts outside of California, it does not confer personal jurisdiction over Erwin.   Thus the primary inquiry is whether the remaining counts, for defamation and tortious interference with contract, support the exercise of personal jurisdiction against Erwin.  As these counts allege intentional torts, the effects test provides an appropriate means for determining specific personal jurisdiction.

When the record is viewed in the light most favorable to the plaintiffs, it indicates that Erwin made several disparaging remarks about SII and its board, of which Richter was a member.  But it does not indicate that Erwin singled out Richter or specifically referred to her by name.  Instead Erwin's statements were directed toward SII and its board as a whole.  Thus the brunt of the harm was directed and felt in

California. It does not comport with fundamental fairness, because one board member fortuitously resides in Minnesota, that Erwin be haled into court there. Thus a Minnesota court cannot exercise specific personal jurisdiction.

To determine whether there are systematic and continuous contacts that will support general personal jurisdiction, a court considers five factors. These factors are (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts with the forum state; (3) the relation of the plaintiff's cause of action to the defendant's contacts; (4) the interest of the forum state in providing relief for its residents; and (5) the convenience to the parties. The first three factors are given greater weight than the remaining two factors. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir. 2003).

Here Erwin has only superficial contacts with Minnesota. His business, Crestport, has had nominal sales to Minnesota residents. But these sales do not require meaningful interaction with Minnesota residents. More importantly, the plaintiffs' action does not arise out of any business with Crestport. Plaintiffs argue that, when Erwin made disparaging remarks about SII, he did so in part to increase sales for Crestport. Even assuming that plaintiffs are correct, the role of Crestport is too attenuated to supply the systematic and continuous contacts needed for general personal jurisdiction.

The parties devote substantial analysis in their briefs to whether a website, operated by Crestport and available in Minnesota, is sufficient to confer personal jurisdiction. The plaintiffs cite the *Zippo* test, which was adopted by the Eighth Circuit in *Lakin v. Prudential Securities, Inc.* 348 F.3d 704, 710 (8th Cir. 2003) (citing with approval *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)). The *Lakin* court held that the *Zippo* test is appropriate for determining specific personal

jurisdiction. But it added that, when determining general personal jurisdiction, the *Zippo* test only informs the third factor in the five-factor analysis. *Id.* at 710-11.

The *Zippo* test employs a "sliding scale" for evaluating the quality and nature of contacts through a defendant's website. The top of the scale, where personal jurisdiction is appropriate, covers situations where a defendant "clearly does business over the internet." The bottom of the scale, where personal jurisdiction is inappropriate, covers situations where a defendant posts information but does not allow interaction by internet users. The greater the level of interactivity or commerce, the more likely that the website supplies sufficient contacts for personal jurisdiction. *Zippo Mfg. Co.*, 952 F.Supp. at 1124.

*Bible & Gospel Trust*, discussed in greater depth above, questioned whether the *Zippo* test is appropriate in cases involving defamation. It determined that, when the internet is the instrumentality for defamation, the effects test supplies a more meaningful analysis for specific personal jurisdiction. *Bible & Gospel Trust*, 354 F.Supp.2d at 1031. Although the instant case does not involve defamation over the internet, this reasoning is also persuasive here, where defamation is the core theory of the plaintiffs' case.

Assuming for the sake of argument that Crestport's website can be attributed to Erwin, the plaintiffs do not allege that their action arises out of any activities on or through the website. Because the website is not advanced as the basis for specific personal jurisdiction, the *Zippo* test is not determinative. *See Lakin*, 348 F.3d at 710. On the question of general personal jurisdiction, the *Zippo* test is only relevant to the third factor, the relation of the plaintiff's cause of action to the defendant's contacts. Even though the Crestport website tops the *Zippo* sliding scale, there is no substantial relationship between the plaintiffs' claims here and the Crestport website. Thus the website also does not influence the previous analysis on general personal jurisdiction.

## III.    CONCLUSION

For the reasons discussed above, this Court concludes that it lacks personal jurisdiction over the defendants.  This Court recommends, therefore, that the Erwin's motion to dismiss for lack of personal jurisdiction be granted.

## IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.     Erwin's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Doc. No. 6) be **GRANTED.**

2.     This matter be **DISMISSED WITHOUT PREJUDICE.**

Dated this 10th day of February, 2006.                    s/Jeanne J. Graham

_____

JEANNE J. GRAHAM
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by March 3, 2006.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.